IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMES F. BROWN, #034367<br>　　　　Plaintiff, | *<br>*|
| v. | CIVIL ACTION NO. RWT-06-1910<br>* |
| FREDERICK COUNTY, et al.,<br>　　　　Defendants. | *<br>****** |

| | |
|---|---|
| JAMES F. BROWN, #034367<br>　　　　Plaintiff, | *<br>* |
| v. | CIVIL ACTION NO. RWT-06-2082<br>* |
| FREDERICK COUNTY, et al.,<br>　　　　Defendants. | *<br>****** |

## MEMORANDUM OPINION

On July 24, 2006, Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff alleges he was the victim of an improper traffic stop and excessive police force on June 23, 2006. Paper No. 1, Civil Action No. RWT-06-1910. On August 9, 2006, Plaintiff filed a second civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff's second complaint alleges he was racially profiled by Frederick County police officers. Plaintiff contends this racial profiling resulted in several improper traffic stops, including the stop on June 23, 2006. Defendants have filed several dispositive motions. Defendants' dispositive motions shall be treated as motions for summary judgment. An opposition, reply and sur-replies have been filed by the parties. Paper Nos. 14-18, Civil Action No. RWT-06-1910, Paper Nos. 12-14, RWT-06-2082. No hearing is needed to resolve Defendants' pending dispositive motions, all of which

will be granted by a separate order.  See Local Rule 105.6 (D. Md. 2004).[1]

## I. FACTUAL BACKGROUND

### (a) First Stop, September 19, 2005

Plaintiff alleges he was pulled over in Frederick County by officer Kretsinger on September 19, 2005.  Officer Kretsinger arrested Plaintiff for driving on a suspended license.  Plaintiff states officer Kretsinger searched Plaintiff's car and "alleged that he found some marijuana for which the plaintiff was also charged." Paper No. 1, RWT 06-2082.  Plaintiff also alleges his hat and a pair of gloves were removed from the trunk of his car by officer Kretsinger.  Plaintiff claims the hat and pair of gloves were not in his car when Plaintiff retrieved the car from the impound lot. Id.

### (b) Second Stop, January 20, 2006

Plaintiff alleges he was pulled over a second time in Frederick County by officer Ochoa and officer Boyer on January 20, 2006.  Plaintiff states he was maintaining the posted speed limit when he was pulled over.  Plaintiff gave officer Boyer his driver's license and vehicle registration.  Plaintiff "noticed that it was taking the officer a long time to return with his driver's license (about 20-30 minutes)."  During this time, another officer approached Plaintiff and told him a dog would walk around Plaintiff's car.  The drug detection dog then walked around Plaintiff's vehicle.  Officer Boyer asked Plaintiff to step out of the car.  Officer Boyer

---

[1] Also pending are a Motion for Extension of Time to Respond to the Complaint (Paper No. 9), which shall be granted *nunc pro tunc*, and Plaintiff's Motions for Appointment of Counsel (Paper No. 20, Civil Action No. RWT-06-1910 and Paper No. 17, Civil Action No. RWT-06-2082), which shall be denied.  A U.S. District Court Judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances.  Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975); see also Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982).  The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant.  Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984).  The Court finds from its review of the pleadings that Plaintiff is able to adequately articulate the facts and grounds for relief in the instant matters without difficulty.  Furthermore, Plaintiff's allegations are not of undue complexity.  Therefore, in the exercise of its discretion, the Court denies Plaintiff's requests for appointment of counsel.

then searched Plaintiff. Officers Boyer and Ochoa then searched Plaintiff's car. Plaintiff alleges he was then given a "fictitious traffic warning" and released after being detained for a total time of one hour.

### (c) Third Stop, March 13, 2006

Plaintiff alleges that less than two months later he was driving in Frederick County when he noticed a patrol car speeding towards him. Plaintiff states that in an effort to "put an end to this bias practice from the same police department [he] took the exit in route to the Frederick County Sheriff's Office in order to file a complaint." Plaintiff pulled over approximately one-quarter mile from the Sheriff's Office. Plaintiff told the officers he was traveling to the Sheriff's Office to file a complaint against the officers for "profiling." Plaintiff was informed that one of his tag lights was out and was given a repair order. Plaintiff contends that he checked his lights before leaving Baltimore City. Plaintiff also states he filed a complaint with Karen Menso and was advised he would be contacted in regard to his complaint. However, Plaintiff claims he was never contacted regarding his complaint.

### (d)     Fourth Stop, June 23, 2006

Plaintiff further alleges he was driving in Frederick County on June 23, 2006 when officer Ensor began to follow Plaintiff in his patrol car. After officer Ensor activated his emergency lights, Plaintiff states he "decided that he wouldn't be profiled this night and continued to drive to an area where he decided to exit his vehicle." After exiting his car, Plaintiff claims he "slowly ran for about five hundred feet with the expectation of being apprehended." Plaintiff alleges he was then assaulted by officer Ensor and an unknown officer while he lay face down on the ground "clinging on to the edges of life." According to Plaintiff, he was tased approximately ten times. Plaintiff alleges that while he was being tased he laid face down on the ground with both hands underneath him and felt an officer's knee on his back.

Plaintiff claims he was rendered unconscious by the taser.

**(e) Defendants' Version of Events**

Defendants tell a different tale about each of the four traffic stops. Officer Kretsinger prepared a Statement of Probable Cause regarding Plaintiff's first traffic stop. In his statement, Krestinger affirmed he observed Plaintiff's Cadillac traveling at a high speed. Kretsinger followed the Cadillac for approximately one-half mile and determined Plaintiff was traveling 70 miles per hour in a 55 miles per hour zone. Officer Kretsinger then pulled Plainiff over. Plaintiff provided Kretsinger with his license and vehicle registration. Kretsinger determined that Plaintiff's license was suspend for non-payment of child support and ordered Plaintiff out of the vehicle. Officer Kretsinger claims he advised Plaintiff that his license was suspended and placed him under arrest. Kretsinger patted Plaintiff down for weapons and instructed him to stand near the front of Kretsinger's cruiser with another officer. Kretsinger then searched Plaintiff's vehicle. Kretsinger observed small pieces of suspected marijuana on the passenger floor and seventeen air fresheners located throughout the passenger compartment. Officer Zang advised Kretsigner that Plaintiff was nervous and was pretending to be unconscious on the hood of the cruiser.

After Kretsinger finished his search of the interior of the car he noticed a white rag sticking out of the trunk. When Kretsinger pulled on the rag a bag of suspected marijuana fell into view.

On January 20, 2006, officer Boyer issued Plaintiff a traffic violation warning for speeding. On March 13, 2006, Plaintiff received a traffic violation warning for driving without a rear tag light. The latter ticket notes Plaintiff was extremely uncooperative, did not have a temporary registration card, and was swerving in the lane.

Officer Ensor prepared a statement of probable cause regarding the traffic stop on June

4

23, 2006.  In his statement, officer Ensor alleges he observed a red Oldsmobile with a license plate frame partially covering the registration plate.  As officer Ensor pulled his patrol car behind the Oldsmobile, he observed the vehicle swerving over the solid white line on westbound I-70.  Ensor then initiated a traffic stop by activating his emergency lights.  The Oldsmobile began to slow and pulled onto the right shoulder of I-70 before accelerating and pulling back into the travel portion of the highway.  Ensor then activated the siren on his cruiser.  After a lengthy chase the car pulled to the side of the road and Plaintiff attempted to flee on foot.  Ensor "noticed that [Plaintiff] was reaching in his left pocket area."  Plaintiff was ordered to stop, but continued running until apprehended.  Plaintiff did not comply with the deputies' directive to put his hands behind his back.  The officers allege they warned Plaintiff that he would be tased if he did not comply with the officers' orders.  Plaintiff continued to actively resist his arrest and was tased by Defendants.  Defendants allege Plaintiff continued to refuse to comply with the Deputies' directives and was tased a total of three times.  After three taser hits the deputies were able to pull Plaintiff's right hand out from under him and put it behind his back in order to secure the handcuffs.

After Plaintiff had been handcuffed and stood up, Ensor claims he saw a white plastic bag on the ground where Plaintiff had been lying.  The bag contained bundles of glass vials.  The vials contained a white substance that later was found to be cocaine.  Ensor also recovered cocaine folded into a ten dollar bill.

## II. STANDARDS OF REVIEW

### (a) Motion to Dismiss

"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King &

5

Spaulding, 467 U.S. 69, 73 (1989) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In reviewing 12(b)(6) motions, "we must accept the factual allegations of the complaint, [but] we are not so bound with respect to its legal conclusions." Revene v. Charles County Comm'rs, 882 F.2d 870, 873 (4th Cir. 1989) (citations omitted). "In considering a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiffs, and its allegations taken as true." Finlator v. Powers, 902 F.2d 1158, 1160 (4th Cir. 1990) (citing Jenkins v. McKeithen, 395 U.S. 411 (1969)).

### (b) Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)). A dispute over a material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. Anderson, 477 U.S. at 248-49. "The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1986). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." Felty v. Grave-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex, 477 U.S. at 323-24).

## III. ANALYSIS

### (a) Frederick County

Plaintiff has failed to state a claim against Frederick County. Plaintiff named Frederick

County as a defendant under the false assumption that the Sheriff's Department is a county agency. Under Maryland law, county sheriffs and deputy sheriffs are considered employees of the State of Maryland, not the county. Rucker v. Harford County, 558 A.2d 399, 402 (1989); Boyer v. State, 594 A.2d 121, 128 (Md. 1991); Penhollow v. Board of Comm'rs for Cecil County, 695 A.2d 1268, 1284 - 1285 (Md.App. 1997) (stating that in Maryland "sheriffs and deputy sheriffs are not county employees but are State officials or employees"). Because sheriffs and deputy sheriffs are not county employees under Maryland law, Frederick County cannot be held liable for the alleged tortious conduct of Frederick County Sheriff's Department employees. Therefore, Plaintiff's claims against Frederick County must fail as a matter of law.

**(b) Frederick County Sheriff's Office**

Plaintiff's claims against the Frederick County Sheriff's Office are barred by the immunity provided to states and their agencies under the Eleventh Amendment to the United States Constitution. Eleventh Amendment immunity is not absolute. Congress may abrogate a State's immunity through its powers under §5 of the Fourteenth Amendment. See Fitzpatrick v. Bitker, 427 U.S. 445 (1976). Also, a state may waive its immunity. See, e.g., Clark v. Barnard, 108 U.S. 436, 447 (1883). Although §1983 was adopted pursuant to §5 of the Fourteenth Amendment, the United States Supreme Court has explicitly found that Congress did not evince the requisite clear intent to abrogate State immunity through that statute. Penhurst State School and Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Quern v. Jordan, 440 U.S. 332, 342 (1979) (holding that 42 U.S.C. §1983 was not intended to override Eleventh Amendment immunity). The State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts. See MD. CODE ANN., STATE GOV'T, § 12-202(a) (2007). However, Maryland has not waived its immunity under the Eleventh Amendment for federal claims under §1983. Because Maryland has not waived its immunity for suits brought under §1983, and Congress has

7

not explicitly used its Fourteenth Amendment powers to abrogate state immunity for suits brought under §1983, Plaintiff's complaint against the Frederick County Sheriff's Office is barred by Eleventh Amendment immunity.

### (c) Due Process Property Claim

Plaintiff's claim that Officer Kretsinger took Plaintiff's hat and gloves in violation of due process is without merit. In the case of lost or stolen property, sufficient due process is afforded if the aggrieved individual has access to an adequate post-deprivation remedy. Parratt v. Taylor, 451 U.S. 527, 542-44 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[2]  See Juncker v. Tinney, 549 F. Supp. 574, 577-78 (D. Md. 1982).[3]

Plaintiff filed a complaint concerning his lost clothing with the Frederick County Sheriff's Office. The complaint resulted in discipline for Officer Kretsinger and compensation for Plaintiff for the loss of his hat. Because there was an adequate post-deprivation remedy for Plaintiff's loss, his due process claim must be dismissed.

### (d) Traffic Stops

Plaintiff is African-American. He was stopped by Defendants on four occasions in a ten month period. Defendants are caucasian employees of the Frederick County Sheriff's Department. Plaintiff alleges the traffic stops were racially motivated and claims his arrests were therefore improper.

Plaintiff's argument that he was falsely arrested on the two occasions he was taken into

---

[2] Plaintiff may avail himself of remedies under the Local Government Tort Claims Act and/or Maryland's Tort Claims Act.

[3] Although Juncker dealt with personal injury rather than property loss, it relies on Parratt as support for the dismissal of the plaintiff's due process claim.

custody must fail.  To survive summary judgment under §1983 for false arrest, Plaintiff must present evidence that each arrest was made without probable cause.  See Street v. Surdyka, 492 F.2d 368, 372-73 (4th Cir. 1974).  Plaintiff's convictions in the Circuit Court for Frederick County, Maryland, establish as a matter of Maryland law that probable cause existed for the arrests.[4]  Zablonsky v. Perkins, 187 A.2d 314, 316 (Md. 1963) (quoting Restatement (First) of Torts § 667 (1938)); see also Quecedo v. DeVries, 321 A.2d 785, 791 (Md. Ct. Spec. App. 1974) (rejecting malicious prosecution claim because the defendant's initial conviction "represents a conclusive determination of the existence of probable cause for the institution of the charge"); Gray v. State of Maryland, No. Civ. CCB-02-0385, 2004 WL 2191705, at *7 (D. Md. Sept. 24, 2004).  Because Plaintiff cannot show the arrests lacked probable cause, the Court must grant summary judgment to Defendants on this issue.

Plaintiff's allegation that each traffic stop violated his Fourth Amendment rights must also fail.  A police officer may execute an investigative stop if he or she has a reasonable articulable suspicion of criminal activity.  Terry v. Ohio, 392 U.S. 1, 8 (1968).  A police officer has probable cause to stop a driver if the police officer witnesses even the most minor of traffic violations.  United States v. Hassan-el, 5 F.3d 726, 731 (4th Cir.1993)  Moreover, the Fourth Circuit follows the objective approach to evaluating alleged Fourth Amendment violations.  Id. (stating that "if an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment").  Therefore, a stop for a traffic violation "does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity."  Id.  A routine and lawful traffic stop

---

[4] Plaintiff pled guilty to possession with intent to distribute narcotics and attempting to flee and elude police in an official police vehicle as a result of the June 23, 2006 stop.  State v. Brown, Case No. 10K06039974 (Frederick Co. Cir. Ct. Feb. 21, 2007).  The judgment in Plaintiff's earlier case was stayed and probation entered as to the driving on a suspended license charge resulting from the September 19, 2005 stop.  State v. Brown, Case Number 10K05038393 (Frederick Co. Cir. Ct. May 2, 2006).

permits an officer to detain the motorist, request a driver's license and vehicle registration, run a computer check, and issue a citation. See, e.g., United States v. Brugal, 209 F.3d 353, 358 (4th Cir. 2000); United States v. Rusher, 966 F.2d 868, 876-77 (4th Cir.1992). In determining whether there was reasonable suspicion, the Court must look at the totality of the circumstances. See United States v. Sokolow, 490 U.S. 1, 8 (1989). Officers are permitted to draw on their experience and specialized training to make inferences from and deductions about cumulative evidence. See United States v. Arvizu, 534 U.S. 266, 273 (2002). Thus, a person's behavior may raise questions justifying a detention when viewed in the totality of the circumstances and combined with the police officer's knowledge and experience. See Illinois v. Wardlow, 528 U.S. 119, 125-26 (2000).

In this case, Plaintiff was arrested as a result of two of the four traffic stops. Defendants claim the basis for the September 20, 2005 stop was to pull Plaintiff over for speeding. Defendants claim the basis for the June 23, 2006 stop was that Plaintiff's tag was partially obscured.[5] Plaintiff disputes these contentions. However, Plaintiff concedes his driving became erratic and that he fled from officer Ensor.[6]

On the two occasions when Plaintiff was stopped and no arrest made, he was issued traffic violation warnings for speeding and for driving without a rear tag light. Plaintiff disputes that he was speeding or that his tag light was not functioning. Plaintiff also states in his affidavit that he inspected his vehicle prior to setting out on the evening in question. Plaintiff also states

---

[5] Plaintiff disputes that the tag frame obstructed his license plate by stating the vehicle did not have a tag frame. In support of his contention, he has attached a picture of the vehicle taken approximately one month after the stop. This picture is too remote in time to contradict the statement contained in the statement of probable cause.

[6] Plaintiff pled guilty to possession with intent to distribute narcotics and attempting to flee and elude police in an official police vehicle as a result of this incident. A finding for Plaintiff on this claim would call into question his conviction for fleeing and eluding in direct contradiction with the Supreme Court's ruling in Heck v. Humphrey, 512 U.S. 477 (1994).

he drove to the Frederick County Sheriff's Office in order to have employees there view his tag light, which they refused to do. Finally, Plaintiff claims he had a passenger in his car who witnessed these events. However, Plaintiff has not provided an affidavit from his traveling companion verifying the functionality of the tag light. Furthermore, while the traffic warning was issued for the tag light violation, the warning also notes that Plaintiff was observed speeding and swerving in his lane. These observations alone provide sufficient justifications for the officers to stop Plaintiff's vehicle.

Plaintiff's equal protection claim is also deficient as a matter of law. A plaintiff claiming an equal protection violation has the burden of showing purposeful discrimination. McCleskey v. Kemp, 481 U.S. 279, 292 (1987) (noting that to prevail under Equal Protection a plaintiff must show "the decision makers in his case acted with discriminatory purpose"). Plaintiff has presented only conclusory allegations that race was the motivating factor in each of his traffic stops. Because Plaintiff has not provided even a scintilla of evidence that race was a factor in Defendants' conduct, Defendants' motion for summary judgement must be granted.

**(e) Qualified Immunity**

Even assuming Plaintiff's traffic stops were unconstitutional, Plaintiff's claim would nonetheless fail in the face of Defendants' qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Fourth Circuit has delineated a three step test for determining whether an official is entitled to qualified immunity. Under Henderson v. Simms, the Court must "(1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established at the

time of the incident, and (3) evaluate whether a reasonable offic[ial] would have understood that the conduct at issue violated the clearly established right.'" 223 F.3d 267, 271 (4th Cir.2000) (quoting S. P. v. City of Tacoma Park, 134 F.3d 260, 265 (4th Cir. 1998)); see also Vathekan v. Prince George's County, 154 F.3d 173, 179 (4th Cir. 1998).

In determining whether the right claimed to have been violated is clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U. S. 635, 641 (1987). This standard does not require that the exact conduct at issue have been previously held to be unlawful. Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998). However, "the existing authority must be such that the unlawfulness of the conduct is manifest." Id. "If there exists a 'legitimate question' as to whether particular conduct violates a particular right then the right is not clearly established and qualified immunity applies." Korb v. Lehman, 919 F.2d 243, 247 (4th Cir. 1990; Tarantino v Baker, 825 F.2d 772 (4th Cir. 1987) (holding that even when a court concludes a police officer violated a constitutional right, the officer may remain shielded from civil liability unless that right was clearly established).

The third prong of the qualified immunity analysis is an objective evaluation into whether a reasonable official would have believed the conduct violated a clearly established right. See Anderson, 483 U.S. at 638. The proper inquiry is whether a reasonable officer could have believed the stop and search to have been lawful. See Anderson at 483 U.S. 641. In this case, each Defendant observed Plaintiff violating Maryland's traffic laws before the Defendant initiated a traffic stop. Their conduct was objectively reasonable and complied with the requirements of the Fourth Amendment. Therefore, Defendants are entitled to be shielded by qualified immunity.

**(f) Excessive Force**

Finally, Plaintiff's excessive force claim must be dismissed. Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard. See Graham v. Connor, 490 U. S. 386, 395 (1989). This "requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8 (1985) (citation omitted). Factors to be included in making this determination are the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. See Graham, 490 U.S. at 396. The determination is to be made "from the perspective of a reasonable officer on the scene." Id. Furthermore, the right to make an arrest "carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody." Martin v. Gentile, 849 F.2d 863, 869 (4th Cir. 1988).

It is undisputed that Plaintiff left his vehicle and began to flee on foot on the night of June 23, 2006. During his flight, Plaintiff was observed reaching into his pants pocket. When Plaintiff was apprehended he was face down on the ground, and by his own admission his hands were not visible. Defendants contend that Plaintiff refused to move his hands in order to allow himself to be handcuffed. Plaintiff states that after he was apprehended he was tased 10 times.[7] An analysis of the data stored in the taser reflects that it was discharged 5 times on the night of the incident. (Ex. C.; Ex. D.) Ensor and Lawson report that Ensor discharged the taser 3-4 times. Lawson reports that Ensor discharged the taser one time as a warning. Considering the

---

[7] Plaintiff alleges he passed out during the incident and was tased ten times while he lay unconscious. Plaintiff has not advanced any evidence to support this contention. Moreover, Plaintiff's claim is flatly contradicted by the taser discharge reports. There is no dispute that Plaintiff suffered approximately 19 burns. Paper No. 14, RWT-06-1910. However, this does not demonstrate the taser was discharged 10 times. Each time the taser touches the skin it leaves two marks. During a struggle to handcuff a resisting individual it is likely that one discharge of the taser would leave several marks. See Paper No. 15, Ex. C, RWT-06-1910.

13

totality of the circumstances, the Court cannot say that it was objectively unreasonable for Ensor, in the exigency of the situation, to discharge his taser several times to subdue Plaintiff. Therefore, the Court grants summary judgment in favor of Defendant Ensor on Plaintiff's excessive force claim.

## III. CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss and in the Alternative for Summary Judgment will be granted.  A separate Order follows.


September 26, 2007                                  _____/s/_____
DATE                                                            ROGER W. TITUS
                                                                UNITED STATES DISTRICT JUDGE